IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOLLAR BANK, FEDERAL SAVINGS BANK | ) ) ) |
| Plaintiff, | ) C.A. No. ) ) |
| vs. | ) **JURY TRIAL DEMANDED** ) ) |
| LEADSTAR LEADS, a Texas unincorporated entity; and | ) ) ) ) |
| GREG THORNELL, a Texas individual | ) ) ) |
| Defendants. | ) ) |

## VERIFIED COMPLAINT

AND NOW COMES plaintiff, Dollar Bank, Federal Savings Bank, ("Dollar") by and through their attorneys, Metz Lewis Brodman Must O'Keefe LLC, and for its Complaint against LeadStar Leads ("LeadStar") and Greg Thornell ("Thornell"), states as follows:

### PARTIES

1. Dollar is a federally chartered savings bank organized and existing under the laws of the United States of America, having its principal place of business at Three Gateway Center, Pittsburgh, Pennsylvania 15222.

2. Upon information and belief, LeadStar Leads is an unincorporated entity having an address and place of business at 14934 Webb Chapel Road, Suite 2, Dallas, Texas 75234. Thornell is believed to be a principal manager or owner of LeadStar, and located at the same address.

## JURISDICTION AND VENUE

3. This Complaint is based upon trademark infringement, false designation of origin and description of goods, dilution, and unfair competition. It arises under the trademark laws of the United States, codified at Title 15, United States Code § 1051, et seq. and under the trademark and common laws of the Commonwealth of Pennsylvania.

4. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332 and 1338, in that this action arises under the laws of the United States.

5. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b), and under the doctrine of pendent jurisdiction in that the claims are joined with a substantial and related claim under the trademark laws of the United States.

6. This Court has jurisdiction over LeadStar and Thornell with respect to the causes of action herein set forth in that LeadStar and Thornell have committed the acts complained of herein in this District and threaten to purposefully commit further acts complained of herein in this District.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) in that the claims arose in this District and Palmetto is subject to personal jurisdiction in this District.

## COUNT I
### Federal Service Mark Infringement

8. The averments of Paragraphs 1 through 7 of the Verified Complaint are incorporated herein by reference as if set forth in full.

9. Continuously since 1855, Dollar has utilized the term "Dollar" as part of a family of marks to identify its services and to distinguish them from those made and sold by others. Most importantly, it has utilized the mark Dollar Bank (the "Mark") as its primary name and

mark. It has made such usage by, among other things, prominently displaying the Mark in connection with its banking and financial services, advertising and marketing materials, physical facilities, promotional items and its documentation associated with the provision of those services. Dollar has obtained a variety of service mark registrations from the United States Patent and Trademark Office for its Dollar family of marks, a chart of which is attached hereto as Exhibit A. As a result of the provision of these services and the associated advertising, the public has come to know and recognize the Mark as identifying exclusively the services of Dollar. The Mark has further developed a secondary meaning such as to associate the term with Dollar.

10. As a result of care, skill and integrity exercised by Dollar in the conduct of its business; the uniform quality of services offered in connection with Mark; and the advertising, sales and public acceptance thereof and the dependable quality of the services offered, the Mark has acquired a consistent reputation with the trade and the public who have recognized and continue to recognize Dollar's Mark to identify the services of Dollar. The Mark has already acquired a distinctive and widespread commercial recognition symbolizing purchaser goodwill of inestimable value which Dollar has created and which is a valuable asset of Dollar.

11. Dollar is in the business of providing banking and financial services, including but not limited to deposit, loan, mortgage, insurance, certificates of deposit, money market and other savings vehicles associated with the Mark.

12. Upon information and belief, Defendants have been, and primarily continue to be, in the business of generating "leads" for sales-based businesses, including, without limitation, sales of life and other insurance. Defendants utilize a variety of methods to develop lists of potential customers (the "leads") for Defendants' customers as illustrated on Defendants'

website at www.leadstartleads.com. These include mass mailings of solicitations including a return card which are intended to gauge the recipient's interest in certain products and services. These solicitations are not necessarily clear with respect to the purveyor or nature of the ultimate products or services being offered. One example of such a solicitation is attached hereto as Exhibit B (the "Solicitation"). The overall look and feel of the Solicitation is presented as an official communication from a lending institution, in this case Dollar Bank, to a borrower who has already purchased a Dollar Bank mortgage product.

13. The Solicitation identifies the borrower as well as the mortgaged property and the amount of the mortgage.

14. The Solicitation identifies Dollar Bank on the response card and purports to be from the Mortgage Protection Customer Service Department. It offers a "new Low Cost Mortgage Home Protection Program" to "Pay Off Your Mortgage." On the response card face, the term "Reminder" is prominently located at the top. To the uninitiated recipient/borrower, this communication would appear to be from the lending institution itself.

15. The Solicitation is intended to entice the borrower to enter into a life insurance purchase with Defendants' customers. This solicitation is made utilizing the name, mark and goodwill of Dollar Bank prominently and in such a way as to deceive the reader into believing the Solicitation, as well as the offered services, originate from Dollar Bank. Moreover, the bold header of the letter further confuses the reader/borrower, stating "Notice of Offering Mortgage Pay-Off Program."

16. The Solicitation purports to come from "National Homeowner Services" which entity, upon information and belief, does not exist. Only a short disclaimer of "Not affiliated with any issuer or lending institution" is located in tiny type on the bottom of the return card.

17. The activities of Defendants, including the advertising and solicitation of life insurance products and services, have infringed Dollar's Mark without the permission of Dollar and are intended and likely to cause confusion, mistake and to deceive the public. Dollar offers its own insurance products to secure payment of mortgages upon the death of an insured.

18. Defendants' acts of infringement will cause irreparable injury for which Dollar has no remedy at law.

19. Defendants have advertised and offered for sale in this district (as shown in the Solicitation), banking and financial services marked with the Defendant's mark. The mark is a colorable imitation of Dollar's Mark, thus causing likelihood of confusion, deception and mistake among the purchasing public in violation of 15 U.S.C. § 1114, which will continue unless restrained by this Court.

## COUNT II
### Federal Unfair Competition Under 15 U.S.C. § 1125(a)

20. The averments of Paragraphs 1 through 16 of the Verified Complaint are incorporated herein by reference as if set forth in full.

21. Dollar's Mark has become uniquely associated with and hence identifies Plaintiff as the source of origin of the services offered in connection with the Mark.

22. Defendants' interstate use of the name and mark Dollar Bank is the use of a false designation of origin, or a false representation, wrongly and falsely designates their products as originating from or being connected with Defendants.

23. Use by Defendants of the name and mark Dollar Bank in connection with the advertising of their services constitutes a false designation of origin that has resulted in and is likely to result in confusion or mistake or deception in the trade, which has caused and will cause

irreparable injury to Dollar, in violation of 15 U.S.C. § 1125(a), and will continue to do so unless enjoined by the Court.

## COUNT III
### Pennsylvania Unfair Competition

24. The averments of Paragraphs 1 through 23 of the Verified Complaint are incorporated herein by reference as if set forth in full.

25. Defendants' use of the name and mark for mortgage and/or insurance-related products and related financial services is likely to cause confusion, mistake or deception as to the source of origin of Defendants' services, and is being carried out with the knowledge or reckless disregard for the fact that such mark is intended to be used to cause confusion or mistake or to deceive all in violation of 54 Pa. C.S.A. §§ 1123 and 1126.

## COUNT IV
### Pennsylvania Dilution

26. The averments of Paragraphs 1 through 25 the Verified Complaint are incorporated herein by reference as if set forth in full.

27. This cause of action arises under 54 Pa. Cons. Stat. Ann. § 1124.

28. Defendants' use of the name and mark Dollar Bank has caused and will cause the dilution of the distinctiveness of Plaintiff's Mark.

29. By reason of Defendants' acts alleged herein, Plaintiff has and will suffer damage to its business, reputation and goodwill, the loss of sales and profits Plaintiff would have made but for Defendants' acts and will incur advertising expenses in dispelling the public confusion caused by Defendants' acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. That this Court find Defendants' acts and use of the name and mark Dollar Bank and its formatives constitute an infringement of Plaintiff's rights.

2. That this Court grant Plaintiff's request for a permanent injunction enjoining Defendants and their agents, servants, employees and attorneys and those persons in active concert therewith from using any logo, trade name or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services of Defendants or of third parties are sponsored by, authorized by, or in any way associated with Plaintiff.

3. That this Court grant Plaintiff's request for a permanent injunction enjoining Defendants and their agents, servants, employees and attorneys and those persons in active concert therewith from infringing Plaintiff's Mark.

4. That this Court grant Plaintiff's request for a permanent injunction enjoining Defendants and their agents, servants, employees and attorneys and those persons in active concert therewith from falsely representing themselves as being connected with Plaintiff or sponsored by or associated with Plaintiff or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that Defendants are associated with Plaintiff.

5. That this Court grant Plaintiff's request for a permanent injunction enjoining Defendants and their agents, servants, employees and attorneys and those persons in active concert therewith from using any reproduction, counterfeit, copy or colorable imitation of the Mark in connection with the publicity, promotion, sale, or advertising of services offered or sold by Defendants, including, without limitation, banking and deposit services, with a copy or colorable imitation of Plaintiff's Mark.

6. That this Court grant Plaintiff's request for a permanent injunction enjoining Defendants and their agents, servants, employees and attorneys and those persons in active concert therewith from fixing, applying, annexing or using in connection with the sale of any goods or services, a false description or representation including words or other symbols tending to falsely describe or represent such goods or services as being those of Plaintiff and from offering such goods or services in commerce.

7. That this Court grant Plaintiff's request for an accounting of all profits and damages resulting from Defendants' activities.

8. That this Court provide to Plaintiff such other relief as it deems just and proper.

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

By: /s/Barry I. Friedman
Barry I. Friedman, Esquire
Pa. ID #50507
535 Smithfield Street, Suite 800

(412) 918-1100

Attorneys for Plaintiffs

## VERIFICATION

I, C. Andrew McGhee, Vice President and General Counsel of Dollar Bank, Federal Savings Bank, have read the foregoing Verified Complaint. The statements therein are correct to the best of my personal knowledge or information and belief.

This statement and verification is made subject to the penalties of perjury under the laws of the United States, 18 U.S.C. 1001, et seq. and 28 U.S.C. § 1746, relating to unsworn declarations.

_____

DATED: 12/2/16